IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM HERBERT VILLAR, #245 066 | * | |
| Plaintiff, | * | |
| v. | * | 2:07-CV-134-WKW (WO) |
| ALABAMA DEPARTMENT OF CORRECTIONS, *et al*., | * | |
| Defendants. | * | |

**SUPPLEMENTAL RECOMMENDATION OF THE MAGISTRATE JUDGE**

On March, 2007 the undersigned entered a Recommendation that Plaintiff's claims against the Alabama Department of Corrections and the Easterling Correctional Facility and his claims concerning disciplinary proceedings against him for attempted escape be dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). On March 23, 2007 Plaintiff filed objections to the Recommendation of the Magistrate Judge. Upon thorough review of this pleading, the court concludes that Plaintiff's objections are without merit. However, in the interest of justice, the court deems it appropriate to supplement its previous Recommendation in light of the contentions raised by Plaintiff in his objections.

In an attempt to demonstrate that his due process rights were violated by the disciplinary proceedings in question, Plaintiff contends that the sanctions imposed – 45 days of segregation, loss of privileges, and a change in custody – subjected him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." (Doc. No. 11 at

4.) In support of his allegations, Plaintiff maintains that he is now in restrictive custody where he is locked down 24 hours a day with the exception of five hours of exercise every week, he can only shower every other day whereas he used to be able to shower daily, and he may not attend church or receive religious services. (*Id*.) As he did in his complaint, Plaintiff also alleges that his placement on segregation results in an inability to obtain adequate medical care.[1] (*Id*.)

Plaintiff is no longer confined at the Easterling Correctional Facility ["Easterling"]. He is currently incarcerated at the Holman Correctional Facility and was so confined when he filed the instant action. Thus, to the extent Plaintiff complains about the conditions of his current confinement which exist at the Holman Correctional Facility, those claims are not appropriate for review in this court. Rather, if Plaintiff seeks to challenge the present conditions of his confinement, he may do so by filing a civil action in the proper venue for such claims, *i.e.*, the United States District Court for the Southern District of Alabama. *See* 28 U.S.C. § 1404(a).

In order for a federal court to retain jurisdiction over a case, an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Prins v. Coughlin*, 76 F.3d 504, 506 (2nd Cir. 1996) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). A case is deemed moot where the problem sought to be remedied has ceased, or where there "is no reasonable expectation that the wrong will be repeated." *Id.* Under this

[1] Plaintiff's allegation of inadequate medical care while he was housed in segregation at the Easterling Correctional Facility is proceeding against the remaining defendants to this cause of action.

reasoning , the fact that Plaintiff is no longer incarcerated at Easterling moots his complaint for injunctive and/or declaratory relief against the transferring facility insofar as it concerns the conditions of his confinement because he is no longer located there. *See County of Los Angeles v. Davis*, 440 U.S. 625 (1979); *Cotterall v. Paul*, 755 F.2d 777 (11th Cir. 1985).

Turning to Plaintiff's due process challenge with respect to the conditions of his confinement at Easterling during the time in question, as the court previously determined, such claims do not entitle Plaintiff to relief. The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart*, 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests) [footnote omitted]. In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no

liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him, or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations imposed upon Plaintiff based on the attempted escape disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin*, 515 U.S. at 484. This court must, therefore, determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In

> *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of privileges, limited time in disciplinary segregation at Easterling, and the recommendation for an increase in custody classification, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, Plaintiff's theory of liability under the law as established in *Sandin* is indisputably meritless and, therefore, frivolous within the meaning of 28 U.S.C. §

1915(e)(2)(B)(i). *See Neitzke v. Williams*, 490 U.S. 319 (1989).

In his original complaint, Plaintiff requested an award of damages for not being allowed to attend church services while on segregation at Easterling. However, plaintiff fails to allege that this restriction was not reasonably related to the prison's legitimate security interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Additionally, there is no allegation that while housed on Easterling's segregation unit Plaintiff was not permitted to engage in any sort of daily or weekly religious observance, that he was not allowed to possess religious materials and to worship within his cell, and/or that his temporary inability to go to a specific location in order to engage in worship unduly burdened his ability to engage in the practice of his religion. *See id*. at 89-90; *McRoy v. Cook County Dept. of Corrections*, 366 F. Supp.2d 662. 675-676 (N.D. Ill. 2005) (holding that defendants' policy of canceling religious services during lockdowns and staff shortages satisfied the second prong of the *Turner* analysis where there was no allegation or argument that solitary prayer in inmate's cell or group prayer in dayroom were insufficient alternatives to the communal services for the exercise of inmate's faith). Accordingly, the court concludes that this claim is due to be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Therefore, it is the RECOMMENDATION of the Magistrate Judge that:

1. The March 15, 2007 Recommendation of the Magistrate Judge be adopted;

2. Plaintiff's claim for injunctive relief insofar as it concerns the conditions of his confinement, including the alleged denial of inadequate medical care, at the Easterling Correctional Facility be DISMISSED as moot;

3. To the extent Plaintiff seeks to challenge matters related to his confinement at the Holman Correctional Facility, such claims be DISMISSED without prejudice to Plaintiff's right to challenge such conditions in the court having proper venue to entertain such claims;

4. Plaintiff's First Amendment claim be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii);

5. This case be referred back to the undersigned for further proceedings.

The Clerk is DIRECTED to furnish a copy of this Supplemental Recommendation along with a copy of Document Number 10 to Defendants.

It is further

ORDERED that the parties shall file any objections to the Recommendation on or before **April 13, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 30th day of March, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE